## Case No. 8,780.

### In re McELRATH.

### In re EASTON.

[2 Dill. 460.] [1]

Circuit Court. D. Minnesota. 1873.

RAILWAY TARIFF ACT OF MINNESOTA—INSTRUCTIONS TO RECEIVER.

1. Directions of the court to its receiver in possession of and operating the Southern Minnesota Railroad, in respect to conforming to the state statute regulating freight and passenger tariffs.

[Cited in La Crosse Railroad Bridge, Case No. 7,969.]

2. Petition of a shipper, whom the receiver had charged more than the statutory rate, to be allowed to sue the receiver in this court in respect of such excess, granted.

The Southern Minnesota Railroad Company is in the hands of a receiver, appointed by this court, November 7th, 1872, upon the bill of complaint of Samuel B. Ruggles and Albon P. Mann, trustees, to foreclose certain mortgages executed to them in trust to secure the payment of its bonds. The reasons for the appointment of a receiver are given in the opinion of Nelson, J., which will be found reported at length in the Internal Revenue Record for 1873 (page 29), and in the Chicago Legal News, 1872. The bill is still pending in this court. On March 6th, 1871, the legislature of the state of Minnesota passed an act prescribing the maximum rates which railway companies in the state may charge for carrying freights and passengers therein. [Laws Minn. 1871, p. 61.] This act has been held constitutional by the supreme court of the state. At the June term, 1873,

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge. and here reprinted by permission.]

the receiver presented a petition to the court, praying. among other things, for instructions in regard to the rates of transportation to be charged, under the act of the legislature of 1871. At the same time a petition was presented from J. C. Easton, a heavy shipper over the company's line of road, asking permission to sue the receiver for over-charges of freight under that act. Affidavits of Mr. Drake and Mr. Thompson, showing the practical effect of the act of 1871, were submitted to the court.

H. J. Horn and Gordon E. Cole, for trustees.
Geo. L. Otis, for receiver
Mr. Heard, for Mr. Easton.

Before DILLON. Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge. The Southern Minnesota Railroad Company is in the hands of a receiver, appointed by this court, in a proceeding by the trustees of its bondholders, to foreclose the first and second mortgages for near five million of dollars on the property and franchises of the railroad company.

The suit cannot be determined at this term, and the receiver, two days since, made application to the court for directions as to his duty in operating the road to conform to the statute of the state, of March 6, 1871, regulating the tariff of prices or rates to be charged for the transportation of freight and passengers on all railroads within the state. This statute fixes maximum rates which may be charged, and prohibits, under penalties, the taking of any greater rates. It appears by affidavits on file that none of the railroad companies in the state have obeyed the statute, and that they place their refusal to conform to it on the ground that it is an unconstitutional invasion of their chartered rights. It is contended to be unconstitutional in two respects: 1st. Because it is wholly beyond the legislative power (the right not having been reserved when the charters were granted) to prescribe the compensation which the companies shall charge for the services they render. 2d. Because, if the legislature has the power to prevent discrimination against the public, it has no power unjustly to discriminate against the companies, and require them to render services for an inadequate compensation; and in support of this position affidavits are filed to show that the tariff or schedule of prices fixed by the state statute does discriminate against certain productions and localities in favor of others, and in many instances requires services to be performed at much less than the actual cost to the company.

If Mr. Drake is not mistaken as to the practical effect of the act of March 6, 1871. it would seem that the act was not very carefully considered, but the courts cannot of course overthrow a statute because it may be unreasonable, but only because it is unconstitutional. And in respect to the Southern Minnesota Railroad Company, a showing is made that if the receiver shall conform to the statute throughout it will have the effect to reduce the earnings of the road (which are already insufficient to pay the running expenses and interest on its bonded debt) $150,000 per annum. It is, indeed, stated as the opinion of the receiver, that the receipts, under the tariff fixed by the state, would be insufficient to maintain the road in repair and pay operating expenses.

It is shown to us that quite recently the supreme court of the state has sustained the validity of this state legislation, at least to the extent to which the question of its validity was before it for its decision; and that an appeal from its judgment is being prosecuted without delay to the supreme court of the United States. At the same time that the receiver applied for instructions, one J. C. Easton presented his petition to the court for its permission to sue the receiver to recover freight charges paid in excess of the rates allowed by the statute of 1871.

These two applications are before us for disposition. The petition of Easton for leave to sue the receiver is of easy disposition, and the requisite leave is granted, and the parties advised to make, if possible, an agreed case, so that an early determination can be had. The other petition presents difficulties which have not a little embarrassed us, since what ought to be done by the receiver depends upon the question of the constitutional validity of the railroad tariff statute of the state. The court will hesitate before pursuing or sanctioning a course which will bring it in antagonism to the public policy of the state; and if the only question involved was whether the state legislation infringed some peculiar provision of the constitution of the state, we should regard it our duty freely to accept as correct and final the authoritative determination of the supreme court of the state. But evidently here the main question is whether this legislation infringes rights of the companies which are under the protection of the constitution of the United States.

The federal constitution protects all contracts from legislative or judicial invasion on the part of the states, and legislative charters are contracts within the meaning of the constitution; and the question is whether this legislation does invade chartered rights of the companies. This is a federal question, one whose ultimate solution and final settlement rests, and rests alone, with the supreme court of the United States. Upon such a question the decisions of the state courts have a persuasive or argumentative, but no binding or authoritative. force.

In the short time which has elapsed since that question was presented, the court has had no opportunity for its investigation, nor will it have the requisite time before it adjourns. It does not desire in an informal way to prejudge the momentous question here involved.

It is evident that a direction to the receiver to conform in all things to the statute of the state would very injuriously affect the creditors of this company, which is already insolvent, and from such a direction no appeal would lay, nor could any relief be had if it were erroneous. On the other hand, if no direction is made, and if the receiver shall continue the same course hitherto pursued, all the funds will be in the hands of the court, and the court will be open to allow parties aggrieved by the charges to apply to sue the receiver, or have the excess beyond the statute rate refunded.

For the present, therefore, until the question shall be decided by the supreme court of the United States, or until it shall have been decided by us in the regular way, in the case which we have authorized to be brought against the receiver, or in some other case, or until we shall have had opportunity to investigate the question with the aid of arguments, we make no further order. We decline to order the receiver to disregard the state law, but we do not make, at present, any more peremptory order than the one above indicated. We add that there is always a presumption in favor of the validity of an act of the legislature, and that the receiver would be well justified, until further order, in following the state statute, in all instances where the rates fixed by it were reasonable and fairly compensatory to the company. The receiver will form fair and impartial judgments in this matter, and if, while the subject remains before us for further consideration, he is of opinion that the rates fixed by the statute are unjust, and that they are unreasonably low and will not compensate for the services required, he is at liberty to act in such cases, for the time being, under the direction and advice of the trustees, who are the parties having the most at stake in this matter. It must not be implied that we have any fixed opinion or impression that there is any middle ground between the absolute right of the companies on the one hand to fix their own compensation, and the absolute right, on the other, of the legislature to prescribe their compensation. But fair and just rates while the matter is sub judice will actually injure no one, and as the court has control of the funds in the hands of the receiver, and the power, as it will have the inclination, to restore any moneys which may turn out to have been improperly received, the course above indicated seems to be the best practicable temporary disposition of the receiver's petition. A final determination of the question will not be unnecessarily delayed, and when reached the directions to the receiver will be made to conform to it.

Upon the foregoing announcement being made, the trustees for the bondholders stated that an agreed case was about being made to be submitted at this term, to test the validity of the act of March 6, 1871.